Matter of Cruz (Strikeforce Staffing LLC--Commissioner of Labor) (2022 NY Slip Op 02849)

Matter of Cruz (Strikeforce Staffing LLC--Commissioner of Labor)

2022 NY Slip Op 02849

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

533409
[*1]In the Matter of the Claim of Nelson Ruiz Cruz, Respondent. Strikeforce Staffing LLC, Appellant. Commissioner of Labor, Respondent.

Calendar Date:March 22, 2022

Before:Lynch, J.P., Clark, Reynolds Fitzgerald, Colangelo and McShan, JJ.

Law Office of Gregory Smith, New York City (Gregory G. Smith of counsel), for appellant.
Carolyn B. George, Albany, for Nelson Ruiz Cruz, respondent.
Letitia James, New York City (Marjorie S. Leff of counsel), for Commissioner of Labor, respondent.

Clark, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed October 15, 2020, which ruled that Strikeforce Staffing LLC was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Strikeforce Staffing LLC is a staffing agency that recruits and refers job seekers to its clients — various businesses in need of workers. Claimant completed an online application seeking work in line production, and Strikeforce recruited him for an interview with a bakery in need of a pallet packer. Claimant was hired by the bakery, and he worked there from October 2017 through July 2018, when the bakery discharged him after a problem arose. Claimant thereafter applied for unemployment insurance benefits, and the Unemployment Insurance Appeal Board determined that claimant was an employee of Strikeforce and that Strikeforce was liable for unemployment insurance contributions on remuneration paid to claimant and those similarly situated. Strikeforce appeals, and we reverse.
In making a determination regarding employment status, "all aspects of the arrangement" must be considered, "[b]ut the touchstone of the analysis is whether the [putative] employer exercised control over the results produced by the worker or the means used to achieve the results" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 137 [2020] [internal quotation marks, brackets and citations omitted]). "[I]f supported by substantial evidence on the record as a whole," such a determination "is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (id. at 136 [internal quotation marks and citation omitted]), but "[i]ncidental control over the results produced — without further evidence of control over the means employed to achieve the results — will not constitute substantial evidence of an employer-employee relationship" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks and citation omitted]; see Matter of Desravines [Logic Corp.-Commissioner of Labor], 146 AD3d 1205, 1206 [2017]; Matter of Richins [Quick Change Artistry, LLC-Commissioner of Labor], 107 AD3d 1342, 1344 [2013]).
The record reflects that Strikeforce recruited job seekers for its clients, businesses in need of workers, by placing advertisements on various websites. For example, claimant completed an application on Indeed.com for a line production position at a bakery. Strikeforce would first screen a job seeker's application to see if he or she potentially met a client's needs and, if so, send the individual for an interview with the client. The client would make a hiring decision and, according to the testimony of the owner and operator of Strikeforce, Strikeforce clients did not hire about 30% to 40% of the applicants referred to them. If hired, the client, not Strikeforce, would provide [*2]the worker with his or her rate of pay, which the worker was free to negotiate with the client,[FN1] and the worker's schedule.
When workers such as claimant were hired by a client, they were sent a congratulatory letter from Strikeforce highlighting certain contractual obligations. This letter noted, among other things, that the workers must advise both the client and Strikeforce if they could not report to work. However, the contract itself, provided by Strikeforce and signed by claimant, required only that a worker contact the client regarding absences, and the owner/operator of Strikeforce offered uncontradicted testimony that this was in fact Strikeforce's expectation whereas the letter reflected a "best practice[]" (see Matter of Jhaveri [Stacy Blackman Consulting, Inc.-Commissioner of Labor], 127 AD3d 1391, 1392 [2015]). The letter also stated that a worker should contact Strikeforce with questions pertaining to payroll or the contract itself,[FN2] "not [questions] concerning the work," as explained by the owner/operator. Strikeforce did not provide the workers hired by its clients with any benefits, trainings or supplies. It placed no restrictions on other employment, and workers remained free to refuse work at any time.
Daily supervision of a worker was entirely the responsibility of the client who hired him or her, and Strikeforce in no way evaluated any aspect of the worker's performance. The client could terminate the worker as it saw fit to do so, although Strikeforce could then refer the terminated worker to another client for that client's consideration. As reflected in the contract between Strikeforce and claimant, the only real role that Strikeforce played after a worker was hired by a client was processing payroll. A worker would submit a timesheet to Strikeforce, only after the timesheet was approved by the client, and Strikeforce would issue a paycheck based upon the hours that the client approved. Strikeforce would bill the client at a rate above the wages paid to the worker, representing Strikeforce's profit. The record is silent as to whether a worker would be paid under the circumstance where a client did not pay Strikeforce.[FN3]
As Strikeforce does not exercise any control over the manner in which the workers hired by its clients perform their services, the means used to supply those services or the results produced, we cannot find that there is substantial evidence to support the Board's determination that Strikeforce exercised sufficient direction, supervision and control over claimant, and those similarly situated, to demonstrate an employment relationship (see Matter of Desravines [Logic Corp.-Commissioner of Labor], 146 AD3d at 1206-1207; Matter of John Lack Assoc., LLC [Commissioner of Labor], 112 AD3d 1042, 1043-1044 [2013]; Matter of Holleran [Jez Enters., Inc.-Commissioner of Labor], 98 AD3d 757, 757-759 [2012]). The determination must therefore be reversed.
Lynch, J.P., Reynolds Fitzgerald, Colangelo and [*3]McShan, JJ., concur.
ORDERED that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Claimant did in fact negotiate a higher rate of pay with the bakery part way through his time there.

Footnote 2: The one-page contract generally advises the worker that he or she is an independent contractor who will receive his or her schedule, job tasks and instructions on how to perform those tasks from the client who hired the worker and that Strikeforce offers no benefits and withholds no taxes from a worker's paycheck.

Footnote 3: To the extent that the record suggests that Strikeforce acted as a liaison between its clients and their workers when complaints arose, "managing complaints from clients is not conclusive as to the type of employment relationship, as the 'requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee'" (Matter of Escoffery [Park W. Exec. Servs. Inc.-Commissioner of Labor], 180 AD3d 1294, 1297 [2020], quoting Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1016 [2016]). What is clear is that Strikeforce kept no records of client complaints.